UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,

    Plaintiff,

vs.            Case No. 8:10-CV-166-T- EAK-MAP


BRIAN L. MEEKER, as Trustee for the
BRIAN L. MEEKER TRUST dtd 12/06/1991,

    Defendants.
_____/


**ORDER ADOPTING REPORT AND RECOMMENDATION**

  This cause is before the Court on the report and recommendation (R&R) issued by Magistrate Judge Mark A. Pizzo on December 13, 2012 (Doc. 125). The magistrate judge recommended that: 1) the Receiver's motion for summary judgment (Doc. 90) be granted to the extent that Nadel operated the hedge funds as a ponzi scheme at the time of the transfers to Brian L. Meeker, as Trustee for the Brian L. Meeker Trustee dtd 12/06/1991 (hereafter Meeker), and that the transfers to Meeker were made with the actual intent to hinder, delay, or defraud as required by Fla. Stat. § 726.105(1)(a); 2) though the transfers to Meeker are avoidable under FUFTA, the Receiver should be given fourteen days to show cause why the false profits in the amount of $645,641.67 should not be set-off by $736,875.23 lost by Meeker and his wife in

other hedge fund accounts; 3) the Receiver's motion to strike report of Defendants' designated expert, Harold McFarland, and to Preclude His Testimony at Trial (Doc. 99) be denied; 4) Meeker's motion for summary judgment relating to statute of limitations (Doc. 93) be denied; and 5) the Receiver's renewed motion for partial summary judgment (Doc. 59) be found to be moot.  The R&R also recommended that the Receiver's request for pre-judgment interest be denied.

Pursuant to Rule 6.02, Rules of the United States District Court for the Middle District of Florida, the parties had fourteen (14) days after service to file written objections to the proposed findings and recommendations, or be barred from attacking the factual findings on appeal. Objections and responses to objections to the report and recommendation were filed (Docs. 127, 130, 131 and 132).  The parties also filed responses to the order to show cause issued by the Magistrate Judge regarding set-off (Docs. 128 and 133).

## STANDARD OF REVIEW

Under the Federal Magistrate's Act (the "Act"), Congress vested Article III judges with the power to authorize a United States Magistrate Judge to conduct evidentiary hearings. 28 U.S.C. § 636. A District Court Judge may designate a United States Magistrate Judge to conduct hearings, including evidentiary hearings, in order to submit proposed findings of fact and recommendations (i.e. R & R) for the disposition of motions for injunctive relief. 28 U.S.C. § 636(b)(1)(B).  Section 636(b)(1) also states that a judge of the court shall make a de novo determination of those portions of the R & R to which objection is made. 28 U.S.C. § 636(b)(1).

When a party makes a timely and specific objection to a finding of fact in the report and

recommendation, the district court should make a de novo review of the record with respect to that factual issue.  28 U.S.C. § 636(b)(1); **U.S. v. Raddatz**, 447 U.S. 667 (1980); **Jeffrey S. v. State Board of Education of State of Georgia**, 896 f.2d 507 (11th Cir. 1990).  However, when no timely and specific objections are filed, case law indicates that the court should review the findings using a clearly erroneous standard.  **Gropp v. United Airlines, Inc.,** 817 F.Supp. 1558, 1562 (M.D. Fla. 1993).

## DISCUSSION

A. Background

The Magistrate Judge filed an excellent Report and Recommendation, which this Court incorporates by reference.  Therein he outlined the basics of this cause.   He stated:

> This is one of many cases in this division emanating from a Securities Exchange Commission enforcement action aimed at dealing with the aftermath of a massive ponzi scheme perpetrated by Arthur Nadel, a hedge fund manager.  *See S.E.C. v. Arthur Nadel, et al.,* Case No.  8:09-cv-87-T-26TBM.  After the SEC's action and the appointment of Burton Wiand as the Receiver, Nadel pled guilty in the Southern District of New York to a fifteen count indictment charging him with securities fraud, mail fraud, and wire fraud surrounding the events precipitating the enforcement action.  The Receiver has sued numerous hedge fund investors, including Brian L. Meeker ("Meeker"), seeking to claw back "false profits" under two theories grounded on the same illegal scheme the indictment tracks: avoidance of fraudulent transfers under Florida's Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101,*et seq.* ("FUFTA"), and unjust enrichment.[1]  Currently, the Receiver moves for summary judgment on a precise but critical issue to the determination of this action – Nadel operated the hedge funds as a ponzi scheme during the distributions of "false profits" to Meeker (*see* docs. 59, 90). (R&R pgs. 1-2).

Further, the R&R concisely set out the question before the Court: "...the case-specific questions should be: Did Nadel operate the hedge funds and Traders as ponzi scheme when he made the

---

[1] These types of cases are often called "clawback" actions.

distributions to Meeker and if so, is the evidence so one-sided that the Receiver is entitled to summary judgment on this issue as a matter of law?" (R&R pg. 4). The Magistrate Judge succinctly says:

> Meeker is one of the investors who experienced a net gain or "false profits." According to Yip, Meeker deposited a total of $1,250,000 in Nadel's scheme. More particularly, Meeker invested $1,000,000 in December 2003 and $250,000 in December 2004, all in Viking Fund, LLC ("Viking"). And, according to the Receiver, Meeker received distributions totaling $1,895,641.67: $700,000 in January 2006, $500,00 in March 2006, $200,000 in January 2007, $200,000 in April 2007, $290,000 in September 2007, and $5,641.67 in September 2007. Hence, these "false profits" amount to $645,641.67 (the amount received from the scheme in excess of the amounts invested). *See* Yip Decl.¶ 3, Sept. 27, 2012. There is no dispute as to whether Meeker received these distributions. *See* Morello Decl., ¶5, Meeker's responses to Receiver's First Set of Requests for Admissions, Ex. D and E to Morello Decl. (R&R pgs. 19).

B. Objections

The Receiver filed objections to the R&R (Doc. 127) only as to any recommendation of the Magistrate Judge that the request for pre-judgment interest be denied. The Receiver makes arguments not raised before the Magistrate Judge but the Court is not persuaded by those arguments. The Court agrees with the Magistrate Judge that:

> An award (of prejudgment interest), however, is grounded in equity and not absolute. *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 283 F.3d 1286, 1297-98 (11th Cir. 2002) (applying Florida law). Florida courts apply various considerations when evaluating the equities: the extent the plaintiff's conduct contributed to the delay between the injury and judgment; whether the prevailing party failed to mitigate damages; in matters involving public bodies, and in choosing between innocent victims, it is inequitable to put the burden of paying interest on the public. *Id.* The list is obviously illustrative as each case is different. But the driving focus demands balancing the equities at hand. As the Florida supreme court (sic) has said: "interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable." *Flack v. Graham*, 461 So.2d 82, 84 (Fla. 1984) quoting *Board of Commissioners of Jackson County v. United States,* 308 U.S. 343, 352 (1939). (R&R pg. 36).

The Court find that the equities support the denial of the request for prejudgment interest.

The Meekers filed objections to the report and recommendation (Doc. 130) and the Receiver responded thereto (Doc. 132).  The Meekers seek denial of the motion for summary judgment on two bases: 1) the money transferred to the defendant was not "property" of Nadel under Florida Uniform Fraudulent Transfer Act (FUFTA), Section 726.101, *et seq*, Fla. Stat.; and 2) whether reasonably equivalent value is exchanged for a transfer is a "fact intensive question for the jury." The Court finds the excellent analysis of the Report and Recommendation and the arguments of the Receiver persuasive on all of the issues raised in the objections of the defendants and incorporates them by reference herein.

The Receiver seeks judgment from this Court in the amount of $645,641.67, the amount of the alleged "false profits."  The Magistrate Judge recommended that the Court allow the Receiver to file further arguments as to whether or not there should be a set-off on this amount. The Receiver filed a response to the show cause order (Doc. 128) and the defendant responded (Doc. 133).

The defendants seek a set-off because they assert that $736,875.23 was lost by Meeker and his wife in other Nadel related hedge fund accounts.  The Receiver counters that a set-off is not available for losses suffered by non-parties Brian L. Meeker and/or Barbara Meeker in their individual capacities or in their capacities as husband and wife because the Receiver asserts that only Brian L. Meeker, as Trustee for the Brian L. Meeker Trustee dtd 12/06/1991 is a party to this action.  The Meekers argue otherwise.

The Meekers point out various other instances when the Receiver allowed set-offs in

seemingly similar instances, i.e., the Vernon M. Lee accounts. The Meekers claim this to be an inequity under the Receiver's Plan (see 8:09cv87-T-26-TBM, Doc. 776), which states "where Claimants have multiple Investor Accounts and one or more of those accounts received False Profits, the accounts are considered on a consolidated basis." (R&R pg. 14).

The Magistrate Judge found that the defense arguments regarding set-off had merit and allowed the filing of further argument on the issue. The Court still has questions after the new filings as to whether or not the Receiver is, in the words of the defense, "...inexplicably except[ing] Mr. and Mrs. Meeker (the "Meekers") from his own court-approved method of setting-off an investor's gains from one account with losses in another account, thereby double-victimizing the Meekers in seeking over half-a-million dollars from the Meekers when they have already suffered net losses far exceeding those alleged false profits."

This issue can be resolved following the entry of this order, when the Court will have to decide if the Receiver is entitled to any recovery in this case. Therefore, the Court directs the parties within the next ten days to confer and see if they can resolve this issue without further Court action. If there is no resolution, the Court directs the Receiver to file, on or before February 8, 2013, a response to the assertions made in the defendants' document 133 regarding the alleged unequal treatment. The defense may respond within three days of the filing. The filings should not exceed ten pages.

The Court finds this case, along with the other Wiand cases, to be unfortunate all the way around. The people involved with Mr. Nadel and his schemes were many. Ms Yip opined that:

>...Nadel, in combination with Christopher Moody and Neil Moody, raised $327 million from investors in connection with more than 700 investor accounts between May 1999 and January 2009.  *See* Yip Decl. ¶¶ 47-48, March 23, 2012; Revisions to Yip Decl. ¶8, July 19, 2012... (R&R pgs.15-16).

These people were injured and may never be made whole.  The role of the Receiver in this case, and similar cases, is to "to bring suits under UFTA against ponzi scheme investors to the extent that investors have received payments in excess of the amounts invested and those payments are avoidable as fraudulent transfers.  *Donell v. Kowell,* 533 F.3d 762, 770 (9th Cir. 2008) ('the policy justification is ratable distribution of remaining assets among all defrauded investors').  Hence, the innocent 'winners' in a ponzi scheme should not be permitted to 'enjoy an advantage over later investors sucked into the ponzi scheme who were not so lucky.'  *Id.* citing *In re United Energy Corp.,* 944 F.2d 589, 596 (9th Cir. 1991)." (R&R pgs. 9-10).

The Court has reviewed the report and recommendation and made an independent review of the record.  Upon due consideration, the Court concurs with the report and recommendation.  Accordingly, it is

**ORDERED** that the report and recommendation, December 13, 2012 (Doc. 1251)  be **adopted** and **incorporated by reference**; the objections of both parties (Docs. 127 and 130) be **overruled**; the Receiver's motion for summary judgment (Doc. 90) be **granted** to the extent that Nadel operated the hedge funds as a ponzi scheme at the time of the transfers to Brian L. Meeker, as Trustee for the Brian L. Meeker Trustee dtd 12/06/1991 (hereafter Meeker), and that

the transfers to Meeker were made with the actual intent to hinder, delay, or defraud as required by Fla. Stat. § 726.105(1)(a)**;** the Court directs the parties within the next ten days to confer and see if they can resolve the set-off and if there is no resolution, the Court directs the Receiver to file, on or before February 8, 2013, a response to the assertions made in the defendants' document 133 regarding the alleged unequal treatment and the defense may respond within three days of the filing, the filings should not exceed ten pages; the Receiver's motion to strike report of Defendants' designated expert, Harold McFarland, and to Preclude His Testimony at Trial (Doc. 99) be **denied**; the defendants' motion for summary judgment relating to statute of limitations (Doc. 93) be denied; and the Receiver's request for pre-judgment interest be **denied.**

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 25th day of January, 2013.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record
Assigned Magistrate Judge